## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RODNEY MCCLINTON,                     :        No. 3:25cv1482
                                      :
                    Plaintiff         :        (Judge Munley)
                                      :
            v.                        :
                                      :
MELISSA COLON, *et al.*,              :
                                      :
                    Defendants        :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Presently before the court is a civil rights complaint pursuant to 42 U.S.C. § 1983, filed by Rodney McClinton ("McClinton"), an inmate currently housed at the Lackawanna County Prison in Scranton, Pennsylvania. McClinton seeks to proceed *in forma pauperis*. (Doc. 4).

For the reasons set forth below, the motion to proceed *in forma pauperis* will be granted for the sole purpose of the filing of the action and the complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii), (iii).

I.     **Factual Background**

In the complaint, McClinton names the following defendants: Probation Officers Melissa Colon, Al Munley, and Eugene Eiden; Lackawanna County Records Supervisor Amy Loupin; Judge Michael Barrasse; Judge Vito Geroulo; Magisterial District Judge Alyce Farrell; Clerk of Court Mauri Kelly; Detective

John Munley; Attorney William Thompson; Assistant District Attorney ("ADA")
Andrew Krowiak; and Geisinger Employees Mike and Michelle. (Doc. 1, at 1-2).
McClinton appears to attack the duration of his current confinement and
challenges the denial of parole. (See Doc. 1). The specific allegations are as
follows.

McClinton alleges that defendant Colon denied his right to parole,
defendant Loupin "intentionally falsified records" to deny his entry in the
Lackawanna County Treatment Court Program, and that defendant Kelly
conspired with Loupin. (Doc. 1, at 4-5, 8). He alleges that, during a preliminary
hearing before Magisterial District Judge Farrell, upon questioning by ADA
Krowiak, Detective Munley lied about where McClinton was taken into custody.
(Id. at 6-7). McClinton next alleges that Judge Geroulo set excessive bail and
Judge Barrasse violated his constitutional rights during sentencing. (Id. at 7-9).
Finally, McClinton alleges that Geisinger Employees "Mike" and "Michelle"
violated "HIPPA Regulations." (Id. at 9) (sic).

## II.    **Legal Standard**

The Prison Litigation Reform Act authorizes a district court to review a
complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or
seeks redress against a governmental employee or entity. See 28 U.S.C. §

2

1915(e)(2)[1]; 28 U.S.C. § 1915A[2]. The court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (nonprecedential) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)).

---

[1] 28 U.S.C. § 1915(e)(2) provides:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
    (A) the allegation of poverty is untrue; or
    (B) the action or appeal—
        (i)  is frivolous or malicious;
        (ii)  fails to state a claim on which relief may be granted; or
        (iii)  seeks monetary relief against a defendant who is immune from such relief.

[2] 28 U.S.C. § 1915A provides:

(a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

III.  **Discussion**

McClinton's claims are subject to dismissal pursuant to 28 U.S.C. § 1915

for several reasons.  The court will address each of these deficiencies in turn.

A.  Heck v. Humphrey

As an initial matter, McClinton's challenge to his conviction and subsequent

detention is barred by the United States Supreme Court's holding in Heck v.

Humphrey, 512 U.S. 477, 486-87 (1994).  In Heck, the Supreme Court held that

a constitutional cause of action for damages does not accrue "for allegedly

unconstitutional conviction or imprisonment, or for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid," until the

plaintiff proves that the "conviction or sentence has been reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal

court's issuance of a writ of habeas corpus." Heck, 512 U.S. 486-87.  "[T]he

complaint must be dismissed unless the plaintiff can demonstrate that the

conviction or sentence has already been invalidated." Id. at 487.  Heck applies to

claims involving monetary damages as well as those seeking equitable and

declaratory relief.  It also applies to parole board decisions. Williams v.

Consovoy, 453 F.3d 173, 177 (3d Cir. 2006).

An award or decision in McClinton's favor involving a decision made by the parole board would necessarily imply the invalidity of his detention. Because there is no indication that there has been a successful prior adjudication pertaining to McClinton's alleged unlawful conviction or sentence, it is appropriate to dismiss the claim for damages. McClinton cannot, under Heck, maintain a cause of unlawful imprisonment until the basis for that imprisonment is rendered invalid. See also Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005) (holding that the favorable termination rule of Heck, under which a state inmate must secure a determination of invalidity of his conviction or sentence before seeking § 1983 damages for unconstitutional conviction or confinement, applies to suits by prisoners who no longer are in custody, even though federal habeas relief no longer is available due to the prisoner's release); Mitchell v. Department of Corrections, 272 F. Supp. 2d 464, 473 (M.D. Pa. 2003).

B.    Parole Hearing Challenge

With respect to McClinton's perceived request for a parole hearing or the right to appeal his parole decision[3], it is well-settled that prisoners cannot use §

---

[3] To the extent that McClinton seeks to be released on parole, the Constitution does not by itself give a convict a liberty interest in parole protected by the Fourteenth Amendment. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979); Thorpe v. Gillo, 80 F. App'x 215, 219 (3d Cir. 2003) (nonprecedential). While the states may create a liberty interest under the Fourteenth Amendment, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp 474, 476-77 (E.D. Pa. 1996). The Parole Board has

1983 to challenge the fact or duration of their confinement or to seek immediate

or speedier release. <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973). Although a writ

of habeas corpus is not explicitly raised in McClinton's filings, to the extent that

he seeks release, a person in state custody may file an application for a writ of

habeas corpus challenging the fact or length of his confinement under 28 U.S.C.

§ 2254. "Congress has determined that habeas corpus is the appropriate

remedy for state prisoners attacking the validity of the fact or length of their

confinement, and that specific determination must override the general terms of §

1983." <u>Preiser</u>, 411 U.S. at 499 (determining that challenges to the fact or

duration of physical confinement, or seeking an immediate or speedier release

from that confinement is the heart of habeas corpus); <u>Leamer v. Fauver</u>, 288

F.3d 532, 542 (3d Cir. 2002) (holding, "when the challenge is to a condition of

confinement such that a finding in plaintiff's favor would not alter his sentence or

undo his conviction, an action under § 1983 is appropriate"). Consequently, to

the extent that McClinton is seeking habeas relief pursuant to § 2254, this claim

will be dismissed.

---

complete discretion to grant or deny parole, without constraint from any particularized
substantive predicates. <u>See</u> 61 Pa. C.S. § 6137.

C.    Claims Against Judge Barrasse, Judge Geroulo, and Magisterial District Judge Farrell

McClinton alleges civil rights claims against Judge Barrasse, Judge Geroulo, and Magisterial District Judge Farrell because they presided over portions of his criminal case in Lackawanna County. (Doc. 1, at 6-9). To the extent that McClinton is attempting to assert § 1983 claims against these defendants based on their roles in presiding over aspects of his criminal prosecution, he may not maintain such claims.

Judges are absolutely immune from liability in civil actions, including § 1983 actions, for their judicial acts. Dennis v. Sparks, 449 U.S. 24, 27 (1980). "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Both judges of general and limited jurisdiction, including magisterial district judges, are entitled to judicial immunity. See Figueroa v. Blackburn, 208 F.3d 435, 441 (3d Cir. 2000) (concluding that magisterial district judges, even though they preside over courts of limited jurisdiction, are entitled to protections of judicial immunity). "Generally[,]...'where a court has some subject matter jurisdiction, there is sufficient justification for immunity purposes.'" Id. at 443-44 (quoting Barnes v. Winchell, 105 F.3d 1111, 1122 (6th Cir. 1997)).

There are only two circumstances in which a plaintiff can overcome judicial immunity: (1) when the challenged action is "not taken in the judge's judicial

7

capacity," or (2) when the action is "taken in the complete absence of all

jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000).

With regard to the first exception, an act is taken in a judge's judicial capacity if it

is "a function normally performed by a judge." Id. As for the second exception,

"[g]enerally… 'where a court has some subject matter jurisdiction, there is

sufficient jurisdiction for immunity purposes.'" Figueroa, 208 F.3d at 443-44 (3d

Cir. 2000) (quoting Barnes, 105 F.3d at 1112). In determining whether judicial

immunity applies, the court "must decide whether the Complaint set forth

allegations that, taken as true, establish that the application of an exception to

the doctrine of absolute judicial immunity is above the speculative level."

Kirkland v. DiLeo, 581 F. App'x 111, 114-15 (3d Cir. 2014) (citing Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The claims against Judge Barrasse, Judge Geroulo, and Magisterial District

Judge Farrell pertain to actions and normal functions done in their judicial

capacity in a case over which they properly exercised jurisdiction as Judges of

the Court of Common Pleas and a Magisterial District Judge. As such, they are

absolutely immune from suit. The court will dismiss the claims against Judge

Barrasse, Judge Geroulo, and Magisterial District Judge Farrell in their individual

capacities.

8

Assuming that McClinton seeks to assert official capacity claims against the judicial defendants, these claims must also be dismissed.  The official capacity claims are actually claims against the Commonwealth of Pennsylvania since the Lackawanna County Court of Common Pleas Judges and Magisterial District Judges are part of Pennsylvania's unified judicial system.  See Green v. Domestic Relations Section Ct. of Com. Pl. Compliance Unit Montgomery Cnty., 649 F. App'x 178, 180 (3d Cir. 2016) ("All courts in the unified judicial system are part of the Commonwealth[.]" (citing Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008))); Bern v. First Judicial Dist. of Pa., 426 F.3d 233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component. From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in [the plaintiff's] suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed."); see also 42 Pa. C.S. § 301 ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the: …(4) Courts of common pleas [and]…(9) Magisterial district judges.").  The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court that seek monetary damages.  See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984); A.W. v. Jersey City

Public Schs., 341 F.3d 234, 238 (3d Cir. 2003); see also Hafer v. Melo, 502 U.S.

21, 25 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989).  As

the Commonwealth has not waived its Eleventh Amendment immunity for

lawsuits filed in federal court, it and its departments, as well as their officials sued

in their official capacities, are immune from suits filed in federal court.  See 42

Pa. C.S. §§ 8521-22; see also Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d

Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment

immunity).  Accordingly, any official capacity claims against Judge Barrasse,

Judge Geroulo, and Magisterial District Judge Farrell will be dismissed.

     D.    Claims Against Assistant District Attorney Krowiak and Detective
            Munley

The claims against ADA Krowiak must be dismissed based on the doctrine

of absolute prosecutorial immunity.  This doctrine protects prosecutors from

liability related to their official acts.  Imbler v. Pachtman, 424 U.S. 409, 417-20

(1976).  "More than a mere defense to liability, prosecutorial immunity embodies

the right not to stand trial."  Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008)

(internal quotations and citations omitted).  Under this doctrine, a prosecutor is

absolutely immune from liability for money damages under § 1983 for acts "within

the scope of his duties in initiating and pursuing a criminal prosecution."  Imbler,

424 U.S. at 410.  "Ultimately, whether a prosecutor is entitled to absolute

immunity depends on whether she establishes that she was functioning as the

state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." Yarris v. Cnty. of Del., 465 F.3d 129, 136 (3d Cir. 2006) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993)).

McClinton alleges that ADA Krowiak violated his constitutional rights by bringing criminal charges against him and, subsequently, during the prosecution of his criminal case. (Doc. 1, at 8-9). Courts have consistently held that advocating on behalf of the state during the trial and sentencing phases of a criminal prosecution falls squarely within the scope of a prosecutor's duties. See Fogle v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020) ("[P]rosecutors are immune from claims arising from their conduct in beginning a prosecution, including soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings, presenting a state's case at trial, and appearing before a judge to present evidence.") (internal quotations and quoting sources omitted); Simonton v. Ryland-Tanner, 836 F. App'x 81, 84 (3d Cir. 2020) ("The conduct of a [hearing] and presentation of evidence are undeniably activities 'intimately associated with the judicial phase of the criminal process,' and therefore a prosecutor enjoys absolute immunity from suit based on those activities."). The court concludes that ADA Krowiak's actions are protected by the doctrine of absolute prosecutorial immunity.

"Similarly, police officers who testify in criminal trials are protected by absolute witness immunity from suits under § 1983." Simonton, 836 F. App'x at 84 (citing Briscoe v. LaHue, 460 U.S. 325, 326 (1983) and Kulwicki v. Dawson, 969 F.2d 1454, 1467 (3d Cir. 1992) ("Witnesses who testify falsely at trial are similarly protected [by absolute immunity].")). McClinton alleges that Detective Munley provided false testimony at his preliminary hearing. (Doc.1, at 6-7). The court finds that Detective Munley is shielded from suit by witness immunity. See Simonton, 836 F. App'x at 84 (holding that detective's alleged false testimony at trial "squarely falls within the witness immunity principles of the Supreme Court and this Court").

E.    Claims Against Attorney Thompson

McClinton's claims against his own attorney, William Thompson, are similarly precluded. It is well-settled that "public defenders and court-appointed counsel acting within the scope of their professional duties are absolutely immune from civil liability under § 1983." Walker v. Pennsylvania, 580 F. App'x 75, 78 (3d Cir. 2014) (quoting Black v. Bayer, 672 F.2d 309, 320 (3d Cir. 1982)). This immunity arises from the fact that a criminal defense attorney, even if employed by the state as a public defender, "does not act under color of state law when performing a lawyer's traditional functions." Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981). The claims against Attorney Thompson will be dismissed.

12

F.    Claims Against Records Supervisor Loupin and Clerk of Court Kelly

McClinton next alleges that Records Supervisor Loupin falsified his

records, and that Clerk of Court Kelly conspired with Loupin.  (Doc. 1, at 4-5, 8).

Quasi-judicial officers, who act in accordance with their duties or at the

direction of a judicial officer, are immune from suit.  See Gallas, 211 F.3d at 772-

73 (court administrator entitled to immunity for release of information ordered by

a judge).  The Third Circuit Court of Appeals recognizes "immunity enjoyed by

judicial and quasi-judicial officers, including prothonotaries," as well as the

"equally well-grounded principle that any public official acting pursuant to court

directive is also immune from suit."  Lockhart v. Hoenstine, 411 F.2d 455, 460

(3d Cir. 1969).

Because quasi-judicial immunity applies to court staff who are acting in

their official capacities, McClinton lacks an arguable basis in law for his claims

against defendants Loupin and Kelly and those claims will be dismissed.  See

Marcedes v. Barrett, 453 F.2d 391, 391 (3d Cir. 1971) (holding that quasi-judicial

immunity applied to clerk of courts, a supervisor on the staff of the clerk of courts,

an administrative assistant to the president judge, and a court reporter); Henig v.

Odorioso, 385 F.2d 491, 494 (3d Cir. 1967) (holding that judiciary employees

executing judicial orders are immune from suit); Wallace v. Abell, 318 F. App'x

96, 99 (3d Cir. 2009) (holding the Clerk of the Court "absolutely immunized from

a suit for damages for discretionary acts," and "court personnel are qualifiedly immunized for nondiscretionary acts such as entering orders and notifying parties"); Boyce v. Dember, 47 F. App'x 155, 159 n.4 (3d Cir. 2002) ("a Prothonotary, who acts as a quasi-judicial officer, would have absolute immunity").

     G.   Claims Against Geisinger Employees Mike and Michelle

McClinton alleges that Geisinger Employees "Mike" and "Michelle" violated "HIPPA" regulations, apparently referring to the Health Insurance Portability and Accountability Act ("HIPAA"). (Doc. 1, at 9). Although the court construes McClinton to raise claims arising solely under § 1983 and does not construe McClinton to allege a federal cause of action under HIPAA, it notes that "HIPAA does not provide a private cause of action." Beckett v. Grant, Civ. No. 19-3717, 2022 WL 485221, *3 (3d Cir. Feb. 17, 2022) (citing Meadows v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020)); Johnson v. WPIC, 782 F. App'x 169, 171 (3d Cir. 2019) ("HIPAA does not create a private right of action"); Hatfield v. Berube, 714 F. App'x 99, 105 (3d Cir. 2017) (finding that plaintiff cannot proceed with her claims under HIPAA because "HIPAA does not create a private right of action for alleged disclosures of confidential medical information"). Because HIPAA not does not create a private right of action and cannot be enforced through 42 U.S.C. § 1983, McClinton's allegations of HIPAA violations are

14

insufficient to state a cognizable cause of action in federal court.  See Hatfield, 714 F. App'x at 105.

## IV.    Leave To Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  Phillips v. Allegheny Cnty., 515 F.3d 224, 245 (3d Cir. 2008).  Based on the many deficiencies identified in this memorandum, including, but not limited to, Heck v. Humphrey and absolute immunity, the court concludes that granting McClinton leave to amend would be a futile endeavor.

## V.    Conclusion

Consistent with the foregoing, the court will dismiss the complaint as legally frivolous, for failure to state a claim, and for seeking relief against defendants who are immune from such relief, in accordance with 28 U.S.C. § 1915(e)(2)(B).

An appropriate order follows.

Date: September 10 , 2025

JUDGE JULIA K. MUNLEY
United States District Court

15